## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 23-11136-CJP |
| BRUCE COSTA AND LISA COSTA, | ) | |
|  | ) | |
| Debtors | ) | |
|  | ) | |
|  | ) | |
| IRMA TEVES, PERSONAL | ) | |
| REPRESENTATIVE OF THE ESTATE | ) | |
| OF RICHARD TEVES, | ) | |
|  | ) | AP No. 24-1009-CJP |
| Plaintiff | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| BRUCE COSTA AND LISA COSTA, | ) | |
|  | ) | |
| Defendants | ) | |
|  | ) | |
|  | ) | |

## MEMORANDUM OF DECISION AND ORDER DENYING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court is the Motion for Partial Summary Judgment [ECF No. 28] (the "Motion") and Memorandum in Support (the "Memorandum") filed by plaintiff Irma Teves (the "Plaintiff"), as personal representative of the estate of Richard Teves ("Teves"), and the Opposition [ECF No. 39] (the "Opposition") filed by defendant-debtors Bruce Costa and Lisa Costa (the "Debtors"), which includes a cross-motion for summary judgment (the "Cross-Motion," together with the Motion, the "Motions"). The Plaintiff asks the Court to deny discharge of the Debtors' liability established by a state court judgment. The Motions present two issues that I must address. First, whether the Plaintiff should be awarded summary judgment

establishing nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A)[1] based on a state court

judgment against the Debtors for promissory estoppel, without a finding of fraud. Second,

whether the state court's dismissal of the Plaintiff's fraud claim precludes her from asserting

fraud in this dischargeability action. Having held a hearing (the "Hearing") on the Motions, and

upon consideration of the Motions and summary judgment record, for the reasons stated below,

the Motions are both DENIED.

## I.    Background and Positions of the Parties

In or about 2009, the Plaintiff brought a Superior Court action (the "Superior Court

Action") against the Debtors for the repayment of $243,000 provided by Teves and used by the

Debtors to buy certain real property  with the promise that the Debtors would reimburse him.

The Debtors maintain they did not agree to repay the money Teves had contributed to the

property purchase.

The amended complaint in the Superior Court Action contained five counts: Breach of

Fiduciary Duty (Count I), Fraud in the Inducement (Count II), Constructive Trust (Count III),

Promissory Estoppel (Count IV), and Undue Influence (Count V).  On July 21, 2010, Counts I

and II were dismissed upon the Debtors' Rule 12(b)(6) motion to dismiss (the "Superior Court

Order").[2]  On March 27, 2023, after a trial by jury, the Plaintiff obtained a judgment against the

Debtors on the promissory estoppel count.  The jury verdict slip included the following findings

on special questions:

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code" or "Code").

[2] The Superior Court Order, which is incorporated in a docket entry, states the following: "At hearing, plaintiff conceded there was no fiduciary relationship known to the law between Richard and defendants. Count I is DISMISSED for reasons stated in Defendants memoranda no I(A), fraud claim is untimely and fails to specify fraud; Count II is DISMISSED.  ORDER: Counts I and II are dismissed. Otherwise motion is DENIED."  Opp'n, Ex. C.  For clarity on this Court's citations, the Memorandum includes the Plaintiff's statement of undisputed facts and exhibits, and the Debtors' Cross-Motion attaches the Superior Court docket.

1. Did Lisa Costa and/or Bruce Costa make an unambiguous promise to Richard Teves that they would pay him back money he contributed to the purchase of the Westport house, and intend for Mr. Teves to rely on that promise?

Answer: Yes

2. Did Richard Teves reasonably rely on the promise to his detriment?

Answer: Yes

3. Did Lisa Costa and/or Bruce Costa break the promise to pay Richard Teves back?

Answer: Yes

4. What amount of money will fully and fairly compensate Mr. Teves for the Costas' breach of their promise?

Answer: $243,000

Mem., Ex. F.  Subsequent to the jury's verdict, the state court judge entered a judgment in favor of the Debtors on the constructive trust count.  Mem., Ex. G; Opp'n at ¶ 11.

The Plaintiff argues (1) the state court judgment "has a collateral estoppel effect as to all elements of Plaintiff's claim except for fraudulent intent" and (2) "although fraudulent intent was not an element of Plaintiff's claims litigated" in the Superior Court Action and "was therefore not determined by the court, the Debtors' own testimony . . . establishes the requisite intent" based on the totality of the circumstances.  Mem. at 6–7.  The Plaintiff relies on the Debtors' testimony at trial in the Superior Court Action where they repeatedly denied ever making a promise to repay Teves.  Mem., Ex. C, Trial Tr., March 23, 2023, at 78:20-23, 101:2-6, 104:10-13; Mem., Ex. D, Trial Tr., March 24, 2023, at 42:24–43:3, 43:17-19, 65:20-22, 66:7-11, 88:8–89:8, 95:12-18.   The Debtors contend there is no evidence in the record that supports a claim of fraud, rather the record demonstrates only that the Debtors deny they ever made a promise.  The

Debtors also argue the state court's denial of a fraud count in the amended complaint precludes

the Plaintiff from asserting her fraud claims in the adversary proceeding.[3]

## II.     Standards

### A.  Summary Judgment

"It is apodictic that summary judgment should be bestowed only when no genuine issue

of material fact exists and the movant has successfully demonstrated an entitlement to judgment

as a matter of law." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994)

(citation omitted).  "Only if the record, viewed in that manner and without regard to credibility

determinations, reveals no genuine issue as to any material fact may the court enter summary

judgment."  *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).  "As to issues on which the

nonmovant has the burden of proof, the movant need do no more than aver an absence of

evidence to support the nonmoving party's case."  *In re Varrasso*, 37 F.3d at 763 n.1 (citation

and internal quotations omitted).  "The burden of production then shifts to the nonmovant, who,

to avoid summary judgment, must establish the existence of at least one question of fact that is

both genuine and material."  *Id*. (citations and internal quotations omitted).  "A 'genuine' issue is

one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could

resolve in favor of the nonmoving party."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d

1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 427 (1st Cir. 1996)).

"Material" means that a disputed fact has "the potential to change the outcome of the suit" under

the governing law if the dispute is resolved in favor of the nonmovant.  *McCarthy v. Nw.*

*Airlines, Inc*. 56 F.3d 313, 314–15 (1st Cir. 1995).  "[A] party seeking summary judgment

---

[3] At the Hearing, Debtors' counsel suggested the Debtors would testify they genuinely did not believe they promised to repay Teves.  In the Cross-Motion, they dispute paragraph twelve of the Plaintiff's undisputed material facts, which states "In July of 2022, Richard Teves informed Plaintiff that the Debtors had told him that they were going to repay him for his contribution to the purchase of Westport house after they sold their existing house at 512 Rockdale Avenue in new Bedford, Massachusetts."  Mem. at ¶ 12.

always bears the initial responsibility of informing the . . . court of the basis for its motion, and

. . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). "The inquiry performed is the threshold inquiry of

determining whether there is the need for a trial—whether, in other words, there are any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 250 (1986).

Where there are cross-motions for summary judgment, the same standard of review is

applied, but each motion is examined separately, "drawing all inferences in favor of the

nonmoving party." *Fadili v. Deutsche Bank Nat'l Trust Co.*, 772 F.3d 951, 953 (1st Cir.2014)

(citation omitted).

### B.  11 U.S.C. § 523(a)(2)(A)

The Plaintiff bears the burden of proving the each of the elements of § 523(a)(2)(A) by

the preponderance of the evidence. *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997).

> In order to establish that a debt is nondischargeable because it was obtained by a
> false representation a creditor must show the following: (1) the debtor made a
> knowingly false representation or one made in reckless disregard of the truth, (2)
> the debtor intended to deceive, (3) the debtor intended to induce the creditor to
> rely upon the false statement, (4) the creditor actually relied upon the false
> statement, (5) the creditor's reliance was justifiable, and (6) the reliance upon the
> false statement caused damage.

*Whitcomb v. Smith (In re Smith)*, 555 B.R. 96, 104 (Bankr. D. Mass. 2016), *aff'd sub nom.*

*Whitcomb v. Smith*, 572 B.R. 1 (B.A.P. 1st Cir. 2017) (citing *McCrory v. Spigel (In re Spigel),*

260 F.3d 27, 32 (1st Cir. 2001)).

### C.  Issue Preclusion

"The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual

or legal issue that was actually decided in previous litigation between the parties . . . ." *Grella v.*

*Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994). Collateral estoppel applies in

nondischargeability proceedings. *See Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991). In determining whether a party should be estopped from relitigating an issue decided in a prior state court action, the bankruptcy court must look to that state's law of collateral estoppel. *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 18 (B.A.P. 1st Cir. 2009). A court must determine if the following elements are met:

> (1) there was a valid and final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment.

*Id.* (quoting *Alba v. Raytheon Co.*, 441 Mass. 836, 809 N.E.2d 516, 521 (2004)). "The guiding principle in determining whether to allow defensive use of collateral estoppel is whether the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.'" *Martin v. Ring*, 401 Mass. 59, 62 (1987) (quoting *Fidler v. E.M. Parker Co.*, 394 Mass. 534, 541 (1985) (quoting Restatement (Second) of Judgments § 29)). The party asserting the doctrine has the burden of proving that all the requirements have been met. *See B.B. v. Bradley (In re Bradley)*, 466 B.R. 582, 586 (B.A.P. 1st Cir. 2012).

### D.  Claim Preclusion

Under Massachusetts law, the elements of claim preclusion, or res judicata, include "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005) (internal citations omitted) ("The term 'res judicata' includes both claim preclusion and issue preclusion."). "[D]ismissal for failure to state a claim . . . operates as a dismissal on the merits . . . with res judicata effect." *Saade v. Wilmington Tr., Nat'l Ass'n*, 494 Mass. 1013, 1015 (2024). The doctrine of claim preclusion does not, however, apply in certain

6

dischargeability actions. The Bankruptcy Court has exclusive jurisdiction over actions brought under § 523(a)(2)(A), *Brown v. Felsen*, 442 U.S. 127, 135–36 (1979), and "[b]ecause claim preclusion forecloses all matters which might have been litigated previously, some courts have concluded that it does not apply in a denial of discharge proceeding," *Blacksmith Invs., Inc. v. Woodford (In re Woodford)*, 418 B.R. 644, 651 (B.A.P. 1st Cir. 2009) (citing *Brown*, 442 U.S. 127).[4]

### III. Discussion

#### A. Issue Preclusion and the Element of a False Representation

The Plaintiff contends the state court promissory estoppel judgment requires the Court apply issue preclusion in her favor as to all elements of § 523(a)(2)(A), other than fraudulent intent. She argues the "jury's findings . . . as to the Debtors' false promise, Richard Teves's justifiable detrimental reliance, and damages were essential to" the Superior Court's adjudication

---

[4] *See, e.g.*, *Archer v. Warner*, 538 U.S. 314, 323 (2003) (ruling claim preclusion did not bar plaintiffs from showing settlement debt was nondischargeable under § 523(a)(2)(A) after they reduced state court fraud action to settlement with release provisions and dismissed with prejudice); *Burrell-Richardson v. Mass. Bd. of Higher Educ. (In re Burrell-Richardson)*, 356 B.R. 797, 802 (B.A.P. 1st Cir. 2006) (observing that "[t]he general principle of *Brown* and *Archer*—that bankruptcy courts should examine the underlying nature of a debt, no matter what its form, when the dischargeability of the debt is in question—has been followed by courts repeatedly." (listing cases)); *Chapman v. Tracey (In re Tracey)*, 250 B.R. 468, 471 (Bankr. D.N.H. 2000) (finding plaintiff—who obtained default judgment where debtor filed answer but failed to respond to partial summary judgment motion—could not invoke claim preclusion "in a complaint for an exception to discharge since such an action is being raised for the first time in bankruptcy court"); *Smith v. Smith (In re Smith)*, 189 B.R. 240, 243–44 (Bankr. D.N.H. 1995) (finding "while allegations in the underlying litigation may have included some issues of fraud, the claim that the consent judgment should be excepted from discharge under sections 523(a)(2)(A) and (a)(4) is for the first time before any court and, thus, the doctrine of res judicata should not be invoked");;; *see also Matter of King*, 103 F.3d 17, 19 (5th Cir. 1997) (stating *Brown v. Felsen* "held that the doctrine of res judicata does not apply in bankruptcy nondischargeability proceedings" and reversing bankruptcy court's holding that claim preclusion barred plaintiff's § 523(a)(2)(A) complaint where state court—without explanation—removed the jury's award of damages for fraud upon motion of the debtor); *In re Comer*, 723 F.2d 737, 740 (9th Cir. 1984) ("[A]pplying *res judicata* to bar the bankruptcy court from looking behind the default judgment to determine the *actual amount* of the obligation would not preclude the exercise of the bankruptcy court's exclusive jurisdiction to determine the *nature* of the subject debt for purposes of dischargeability." (emphasis added)); *Vitol Inc. v. Brass (In re Brass)*, 641 B.R. 139, 144 (Bankr. S.D. Tex. 2022) (determining that an agreed to judgment that settled all claims did not preclude creditor from arguing debt was nondischargeable based on fraud, stating claim preclusion "doesn't prevent the bankruptcy court from looking beyond the state-court record and the documents terminating the state-court proceeding to decide whether the debt was for money obtained by fraud").

of the promissory estoppel claim, and "[t]hose issues are identical to false representations, actual

and justifiable reliance, and damages elements of a dischargeability claim under Section

523(a)(2)(A)."  Mem. at 8.  It is undisputed that the parties in this case are identical to the

Superior Court Action[5] and that the Superior Court entered a valid and final judgment.  Based on

the findings of the jury and the elements of a claim for promissory estoppel under Massachusetts

law, collateral estoppel applies to certain factual determinations supporting the third,[6] fourth,

fifth,[7] and sixth[8] elements of § 523(a)(2)(A).[9]  The collateral estoppel implications of the jury

findings and promissory estoppel factors as to the other § 523(a)(2)(A) provisions are less

straight-forward.

      The Plaintiff's contention that issue preclusion should be applied to the first element of  §

523(a)(2)(A) that the Debtors made a "false representation or statement" raises significant issues

---

[5] The Plaintiff commenced the Superior Court Action on behalf of Teves, her father, under a power of attorney, and represented Teves's estate later in those proceedings.

[6] The jury found the Debtors "intend[ed]" for Teves to "rely" on their promise.  *See* 11 U.S.C.  § 523(a)(2)(A) (third element, intent to induce reliance).  *See Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 585 (2024) ("promissory estoppel requires (1) a representation intended to induce reliance on the part of a person to whom the representation is made. . .") (internal quotations omitted).

[7] The jury found Teves "reasonably rel[ied]" on the promise of the Debtors, which was essential to the promissory estoppel judgment and is identical to (or perhaps more burdensome than) the fourth and fifth elements of § 523(a)(2)(A) (actual reliance and justifiable reliance).  *See R.I. Hosp. Tr. Nat. Bank v. Varadian*, 419 Mass. 841, 848 (1995) ("An essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made *reasonably* relied on the representation" (emphasis added)); *see also Field v. Mans*, 516 U.S. 59, 61 (1995) (ruling the standard under § 523(a)(2)(A) "is not reasonable reliance but the less demanding one of justifiable reliance on the [fraudulent] representation").

[8] The jury found that Teves "reasonably rel[ied] on the promise to his detriment" and awarded the Plaintiff monetary damages to compensate for the Debtors' broken promise.  *See* 11 U.S.C. § 523(a)(2)(A) (sixth element, reliance upon the false statement that caused damage).

[9] The jury's verdict found the Debtors intended to induce reliance, Teves's actual and reasonable reliance, and reliance to Teves's detriment, all on a *promise*, not a false representation or statement.  As will be discussed below, I am unable to determine based on the summary judgment record whether the Debtors made a false representation or statement.  Consequently, I need not apply issue preclusion at this time to determine that the Plaintiff has established these elements of her § 523(a)(2)(A) claim.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–31 (1979) (describing situations involving offensive issue preclusion that may be unfair to defendants); *see also Thermal Surgical, LLC v. Brown*, No. 24-127, 2025 WL 2263862, at *7 (2d Cir. Aug. 8, 2025) (noting court's discretion in offensive issue preclusion cases).

that the Plaintiff cannot overcome in the summary judgment context.  Under Massachusetts law, promissory estoppel requires "(1) a representation intended to induce reliance; (2) reasonable reliance on that representation; and (3) resulting detriment." *Tody's Serv., Inc. v. Liberty Mut. Ins. Co.*, 496 Mass. 197, 201 (2025).  It "is equivalent to a contract action[.]" *Id.*  In comparison, a claim for misrepresentation requires a "false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." *Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 77 (1991).  Although the elements of a promissory estoppel and misrepresentation are "very similar," the latter includes the "difficult burden of establishing that the misrepresentation was made with actual knowledge of its untruth." *Hurwitz v. Prime Commc'ns, Inc.*, No. CIV. A. 91-06694, 1994 WL 561834, at *4 (Mass. Super. Apr. 4, 1994), *aff'd sub nom. Hurwitz v. Bocian*, 41 Mass. App. Ct. 365 (1996).

Here, the jury in the Superior Court found the Debtors made an unambiguous promise to pay Teves, induced Teves to rely on the promise, and broke the promise causing damages, but the jury made no finding of misrepresentations or false statements.  Although the Plaintiff characterizes the jury's findings of an unambiguous promise as a "false promise" within the context of the Debtors testimony, this characterization is insufficient for the purposes of issue preclusion.  *See Bender v. Tobman (In re Tobman)*, 107 B.R. 20, 24 (S.D.N.Y. 1989) ("Impressionistic characterizations of the jury verdict are not substitutes for compliance with the specific conditions required to invoke collateral estoppel[.]")  Notwithstanding the Debtors' repeated testimony that no promise was made to Teves and the finding of the jury directly contradicting that testimony, the state court verdict did not include findings on whether the Debtors made a false representation—meaning whether the Debtors intended not to repay amounts advanced by Teves *at the time of the promise*.  *See Palmacci*, 121 F.3d at 787 ("[T]he concept of misrepresentation includes a false representation as to one's intention, such as a

promise to act," but "if, at the time he makes a promise, the maker honestly intends to keep it but later changes his mind or fails or refuses to carry his expressed intention into effect, there has been no misrepresentation."). Because determination of whether the Debtors made a false representation was not essential to the promissory estoppel judgment and the Debtors did have the opportunity to litigate such issue, *In re Stanley-Snow*, 405 B.R. at 18, the Court cannot apply issue preclusion to the element of false representation. Similarly, because the jury's findings on other elements found reasonable reliance to Teves's detriment and intent by the Debtors that Teves rely on a "promise" and not a "false representation or statement," issue preclusion would not necessarily determine the third, fourth, fifth, and sixth elements of § 523(a)(2)(A) in the absence of a finding by this Court that a false representation of statement had been made by the Debtors.

## B. *Totality of the Circumstances and the Element of Fraudulent Intent*

The Plaintiff concedes the state court judgment does not allow the Court to apply issue preclusion to the element of fraudulent intent under § 523(a)(2)(A). Instead, she argues the totality of the circumstances permits a finding of fraudulent intent upon the record before the Court on summary judgment. The Plaintiff again characterizes the jury's finding of an unambiguous promise as a "false promise" and argues "a false promise may constitute a false representation of intent[] '[i]f, at the time he made his promise, the debtor did not intend to perform, then he has made a false representation (false as to his intent)[.]'" Mem. at 9 (quoting *Palmacci*, 121 F.3d at 787 (discussing first element of false representation)). The Plaintiff argues that, because the Debtors denied ever making a promise to reimburse Teves and the jury found the Debtors did make an unambiguous promise, the Debtors never had the intent to repay Teves "by necessary implication," and, thus, that equates to an intent to defraud him. There is a

10

practical appeal to this argument, but after careful consideration, I am not persuaded that I should find the requisite intent on the totality of circumstances of this record.

Compared to the first element's "false representation as to one's intention," the second element of intent in a § 523(a)(2)(A) action "refers to a different type of intent, namely, intent to deceive, manipulate, or defraud." *Palmacci*, 121 F.3d at 787. The element may be met "if the maker of the misrepresentation '(a) knows or believes that the matter is not as he represents it to be; (b) does not have the confidence in the accuracy of his representation that he states or implies; or (c) knows that he does not have the basis for his representation that he states or implies.'" *Id.* (quoting Restatement (Second) of Torts § 526 (1977)). Under certain circumstances, the Court may find requisite intent in a § 523(a)(2)(A) action at the summary judgment stage based on the totality of the circumstances:

> Under § 523(a)(2)(A), "[b]ecause the intent to defraud is rarely proven by direct evidence, courts assess this element using a totality of the circumstances approach to discern the debtor's subjective intent. [A] debtor's fraudulent intent can be inferred if the totality of the circumstances presents a picture of deceptive conduct by the debtor." *Whitcomb v. Smith*, 572 B.R. 1, 16 (B.A.P. 1st Cir. 2017) (internal quotations and citations omitted). . . . "'Generally, summary judgment is inappropriate in cases where intent is an element of a claim, such as § 523(a)(2)(A) . . . [since] [i]ntent is a subjective state of mind and cannot be easily assessed from a record on summary judgment.'" *In re Santiago*, 563 B.R. 457, 468 (Bankr. D.P.R. 2017) (quoting *JJ Best Banc & Co. v. Snyder (In re Snyder)*, 2014 WL 5595764, at *3 (Bankr. N.D. W. Va. Oct. 31, 2014)). Such state of mind issues should only be resolved at the summary judgment stage where the "circumstantial evidence [is] sufficiently potent to establish fraudulent intent beyond hope of contradiction." *In re Varrasso*, 37 F.3d at 764.

*North Shore Bank v. Bona (In re Bona)*, No. 17-40426-CJP, 2019 WL 5799322, at *5 (Bankr. D. Mass. Nov. 6, 2019); *see also Accardi v. Bartel (In re Bartel)*, No. 05-13134-JR, 2008 WL 5396485, at *2 (Bankr. D. Mass. Dec. 23, 2008) ("state-of-mind issues *can* be resolved at the summary judgment stage"); *see also Marrama v. Citizens Bank of Mass. (In re Marrama)*, 445 F.3d 518, 522 (1st Cir. 2006) ("Evidence of fraud is conclusive enough to support summary judgment in a § 727(a)(2)(A) action when it yields no plausible conclusion but that the debtor's

intent was fraudulent."). A court's decision to find fraudulent intent at the summary judgment

stage is a discretionary one. *See Palmacci*, 121 F.3d at 790 ("The determination of whether

scienter exists based on certain circumstantial facts must be treated merely as 'a *permissible*

inference of fact . . . and *not* a presumption of law, or else the distinction between fraud and

negligence will be largely obliterated.'"). Summary judgment may be appropriate "where the

non-moving party rests merely upon conclusory allegations, improbable inferences, and

unsupported speculation." *See Hannon v. ABCD Holdings, LLC (In re Hannon)*, 839 F.3d 63, 72

(1st Cir. 2016) (quoting *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 5 (1st Cir. 1998)). "But

courts must be exceptionally cautious in granting *brevis* disposition in such cases, . . . especially

where, as here, the movant bears the devoir of persuasion as to the nonmovant's state of mind."

*In re Varrasso*, 37 F.3d at 764 (internal citations omitted); *see In re Hannon*, 839 F.3d at 72

(recognizing that "[c]ourts use special caution in granting summary judgment as to intent"

because "[i]ntent is often proved by inference, after all, and on a motion for summary judgment,

all reasonable inferences must be drawn in favor of the nonmoving party" (quoting *Daniels v.

Agin*, 736 F.3d 70, 83 (1st Cir. 2013))).

The factual record of cases in which courts infer fraudulent intent at the summary

judgment stage contain ample circumstantial evidence contradicting a debtor's contention that

such intent was lacking. *See, e.g.*, *In re Hannon*, 839 F.3d at 72 (affirming bankruptcy court's

grant of summary judgment on intent element where court inferred debtor knowingly and

fraudulently made false oath under § 727(a)(4)(A), relying on undisputed evidence that debtor

omitted business payments made for personal benefits like clothes, rent, and groceries which

contradicted his purported lack of understanding of obligation to truthfully report); *Harrington v.

Donahue (In re Donahue)*, No. BAP NH 11-026, 2011 WL 6737074, at *14 (B.A.P. 1st Cir. Dec.

20, 2011) ("[T]he record is devoid of any circumstances which would mitigate against the

12

[debtors'] cumulative falsehoods and demonstrate that there is a genuine issue of material fact as

to their intent."); *see also Spagnuolo v. Brooke-Petit*, 506 B.R. 1 (D. Mass. 2014) (affirming in

part and vacating in part; in context of § 523(a)(2)(A) action, carefully analyzing a state court's

jury findings and special verdict forms on fraud to affirm the bankruptcy court's finding of the

debtor's fraudulent intent at the summary judgment stage).

Here, I do not find that the circumstantial evidence in the record of the Plaintiff's

promissory estoppel judgment compels a finding of the Debtors' fraudulent intent. *See In re*

*Varrasso*, 37 F.3d at 763 ("summary judgment is inappropriate if inferences are necessary for the

judgment and those inferences are not mandated by the record"). The Plaintiff argues the

Debtors' testimony "did not indicate that Debtors had any intent" to reimburse Teves, citing to

sections of the trial transcript in which Debtors testified Teves never asked for reimbursement or

that a promise to repay was never made. Mem. at ¶¶ 13–14. She contends the Debtors'

testimony that they never made a promise to repay—in the context of the jury's finding

otherwise—indicates the Debtors' lack of intent to repay Teves at the time of making the

promise and, thereby, constitutes intent to defraud Teves. The Plaintiff's argument blends

analysis of the first and second § 523(a)(2)(A) elements of false representation and fraudulent

intent. *See* Mem. at 9 (quoting *Palmacci* discussion on first element of false representation).

The Plaintiff does not point to any testimony or other evidence that shows that any statements

found by the jury stating a promise to repay Teves were made with no intent to repay Teves to

mislead him. For example, although the Plaintiff argues that the Debtors' testimony of their

plans to use proceeds of the sale of the property to "pay off [their] bills" shows they disclaimed

"any intent to pay," Mem. at ¶ 15, the state of mind of the Debtors after making the promise

might not inform a finding of fraudulent intent at the time of making a promise; a countervailing

inference could be made that the Debtors originally intended to reimburse Teves, but their

intentions changed and they broke their promise, the latter inference aligning with the findings of

the jury.  Considering this possibility, finding fraudulent intent at summary judgment based on

the totality of the circumstances is not warranted.  The Debtors may present evidence as to their

intent with respect to promises or statements made to Teves.

For these reasons, the Court declines to find fraudulent intent based on the totality of the

circumstances in this summary judgment record.  Accordingly, the Plaintiff's Motion is denied.

### C.  Claim Preclusion and the Superior Court Order

In their Cross-Motion, the Debtors argue they are entitled to summary judgment based on

the doctrine of res judicata, which, as asserted, would be claim preclusion,[10] because the

Plaintiff's fraud claim was dismissed by the Superior Court Order.  They contend the Superior

Court's dismissal of the Plaintiff's fraud in the inducement claim as "untimely and fail[ing] to

specify fraud" constitutes a decision on the merits.  Even if the Superior Court's dismissal may

be considered a decision on the merits, the doctrine of claim preclusion does not apply in this

dischargeability action.  This Court has exclusive jurisdiction of the § 523(a)(2)(A) action.  *See*

*Brown*, 442 U.S. at 135–36.  Notwithstanding the Superior Court Order, claim preclusion does

not bar the Plaintiff from establishing in this adversary proceeding that the debt owed established

by the state court judgment was on account of money or property obtained by a fraudulent

representation.  *See Archer*, 538 U.S. at 315.

### D.  Issue Preclusion and the Superior Court Order

Although not expressly raised by the Debtors, I have also considered whether issue

preclusion bars the Plaintiff from relitigating fraud in this adversary proceeding.  In its analysis,

this Court must look to Massachusetts law on issue preclusion, which requires first "a valid and

---

[10] *Kobrin*, 444 Mass. at 843, ("The term 'res judicata' includes both claim preclusion and issue preclusion.").

14

final judgment on the merits in the prior adjudication,"[11] second "the party against whom

estoppel is asserted was a party . . . to the prior litigation," third "the issue in the prior

adjudication is identical to the issue in the current litigation," and fourth "the issue in the prior

litigation was essential to the earlier judgment." *In re Stanley-Snow*, 405 B.R. at 18. "The

guiding principle in determining whether to allow defensive use of collateral estoppel is whether

the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the

first action or [whether] other circumstances justify affording him an opportunity to relitigate the

issue.'" *Martin v. Ring*, 401 Mass. at 62 (quoting *Fidler v. E.M. Parker Co.*, 394 Mass. at 541

(quoting Restatement (Second) of Judgments § 29)). Massachusetts courts cite favorably[12] to the

Restatement (Second) of Judgments, including the "discretionary exceptions" enumerated within

§ 28 when "relitigation of the issue in a subsequent action between the parties is not precluded."

*Bos. Globe Media Partners, LLC v. Ret. Bd. of Mass. Bay Transp. Auth. Ret. Fund*, No.

1484CV01624, 2016 WL 915300, at *7 (Mass. Super. Mar. 9, 2016); Restatement (Second) of

Judgments § 28. One exception may apply when "there is a clear and convincing need for a new

determination of the issue . . . because the party sought to be precluded, as a result of . . . special

circumstances, did not have an adequate opportunity or incentive to obtain a full and fair

adjudication in the initial action."[13] *See Loucas v. Cunningham (In re Cunningham)*, 526 B.R.

---

[11] In Massachusetts, dismissal of a claim upon a Rule 12(b)(6) motion is considered a judgment on the merits, subject to certain exceptions. *See Mestek, Inc. v. United Pac. Ins. Co.*, 40 Mass. App. Ct. 729, 731 (1996) (discussing Mass. R. Civ. P. 12(b)(6), taken directly from Fed. R. Civ. P. 12(b)(6), and Mass. R. Civ. P. 41(b)(3)). Massachusetts Rule of Civil Procedure 41 provides "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, or for improper amount of damages in the Superior Court as set forth in G.L. c.212, § 3 or in the District Court as set forth in G. L. c. 218, § 19, operates as an adjudication upon the merits." Mass. R. Civ. P. 41(b)(3).

[12] *See, e.g.*, *Mullins v. Corcoran*, 488 Mass. 275, 287 (2021) (declining to apply § 28(5)(c) exception); *Treglia v. MacDonald*, 430 Mass. 237, 240–41 (1999); *Martin*, 401 Mass. at 62; *Fidler*, 394 Mass. at 541; *see also City of Salem v. Mass. Comm'n Against Discrimination*, 44 Mass. App. Ct. 627, 639–40 (1998), *overruled by Trs. of Health & Hosps. of the City of Bos., Inc. v. Mass. Comm'n Against Discrimination*, 65 Mass. App. Ct. 329 (2005) (applying § 28(1) exception) (overruled with respect to issue concerning the Commonwealth's waiver of sovereign immunity).

[13] The full text of the relevant exception found in the Restatement (Second) of Judgments § 28 is as follows:

578, 585–86 (Bankr. E.D. Pa.), *aff'd*, 541 B.R. 792 (E.D. Pa. 2015) (allowing debtor to dispute scienter in § 523(a)(6) action by applying § 28(5)(c) exception based on debtor's well-founded belief that his employer's insurance covered any liability by plaintiff which caused debtor to lack incentive to appear in state court).

The Plaintiff's claim for fraud in the inducement was dismissed as untimely and failing to plead fraud with specificity; the Debtors correctly point out the Plaintiff "never attempted to re-plead the fraud claim," Opp'n at 8, and the Plaintiff failed to appeal. The Superior Court Order constitutes a final judgment on the merits on the fraudulent inducement count. *See Mestek, Inc.*, 401 Mass. at 731; Mass. R. Civ. P. 41(b)(3).

Had the Superior Court dismissed the Plaintiff's fraud claim solely on the ground of failing to specify fraud and the Plaintiff failed to replead or appeal, the Debtors may have had a stronger argument for the application of issue preclusion.[14] The Plaintiff's Superior Court fraud claim, however, was barred by the Massachusetts statute of limitations, Opp'n at 7, which does not apply to this § 523(a)(2)(A) action. *See generally Fledderman v. Glunk (In re Glunk)*, 343 B.R. 754, 760 (Bankr. E.D. Pa. 2006) (expiration of statute of limitations for fraud does not

---

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

[14] With respect to the third element of issue preclusion, the fraud in the inducement claim may be identical to the § 523(a)(2)(A) dischargeability action. *See Sack v. Friedlander (In re Friedlander)*, 170 B.R. 472, 477 & nn. 3–4 (Bankr. D. Mass. 1994) (finding (i) elements of Massachusetts claim for deceit, also referred to as fraud or as fraudulent or intentional misrepresentation, "virtually identical to those of actual fraud under § 523(a)(2)(A)[,]" (ii) "no material difference between intent to deceive and intent to induce reliance[,]" and (iii) "to recover for fraud under Massachusetts law, 'Plaintiff's reliance on the misrepresentation must be reasonable'" (quoting *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 226 (D. Mass. 1990))). The Court notes, however, that the state court fraud claim requires a higher reliance standard. *See Field v. Mans*, 516 U.S. at 59 (ruling the standard under § 523(a)(2)(A) "is not reasonable reliance but the less demanding one of justifiable reliance on the [fraudulent] representation").

16

govern timeliness of § 523(a)(2) dischargeability action (discussing *Lee-Benner v. Gergely (In re Gergely)*, 110 F.3d 1448 (9th Cir. 1997) and *Resolution Tr. Corp. v. McKendry (In re McKendry)*, 40 F.3d 331 (10th Cir. 1994))); *Gill Distrib. Ctrs. v. Banks (In re Banks)*, 225 B.R. 738, 743–44 (Bankr. C.D. Cal. 1998) (same) (subsequent history omitted); *see also Richardson v. Mills (In re Mills)*, No. 11-14097-JNF, 2011 WL 6148662, at *8 n.1 (Bankr. D. Mass. Dec. 12, 2011) (noting the discussion in *In re Banks* and *In re McKendry* concerning state statute of limitations as applicable to establishment of debt compared to exclusive jurisdiction of bankruptcy court governed by Fed. R. Bankr. P. 4007 as applicable to nature of that debt).[15]  It appears the Plaintiff was unable to fully litigate the substantive issues of the Debtors' alleged fraud in the Superior Court Action due to the state statute of limitations, not solely the inadequacy of the complaint which could have been resolved by an amendment.[16]  Where the state court ruled that the claim was barred by a statute of limitations, re-pleading would have been futile.  This supports my determination that the Plaintiff lacked the opportunity and incentive to pursue the fraud claim in the state court action.  *See* Restatement (Second) of Judgments § 28(5).  I conclude that it is necessary to have a determination on the merits on the issue of fraud in this adversary proceeding.  Accordingly, the Cross-Motion is denied.

---

[15] These same authorities—together with the Court's discussion on claim preclusion—support the conclusion that, had the Plaintiff never asserted the fraudulent inducement claim in the state court action, while the Plaintiff may have been barred by claim preclusion from later asserting that claim in another civil action because it must have been brought with the promissory estoppel claim, issue and claim preclusion would not apply to bar the assertion of fraud in a § 523(a)(2)(A) action.

[16] *See* Mass. Civ. R. P. 15(a) ("A party may amend his pleading once as a matter of course at any time before a responsive pleading is served and prior to entry of an order of dismissal or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."); *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004) ("We have often described this standard as reflecting the 'liberal' amendment policy underlying Rule 15.") (collecting cases).

## IV.       Conclusion

The Court will schedule a status conference to discuss scheduling trial. Within 21 days,

the parties shall conference and file a joint report on the expected length of the trial and

witnesses that will testify and whether any further discovery is necessary.


Dated:  September 30, 2025                              By the Court,


                                                       _____
                                                       Christopher J. Panos
                                                       United States Bankruptcy Judge